# EXHIBIT 1

## AFFIRMATION OF ADAM S. KATZ

I, Adam S. Katz, depose and state, as follows:

1.  My name is Adam S. Katz, and I am an attorney licensed to practice law in the State of New York.

2.  I am a partner at the law firm of Goldberg Segalla.

3.  I am intimately familiar with *In Re: The Estate of Michael Blair Lawhead, Deceased*, Surrogates Court File No. 2018-1121 ("The Surrogates Court Litigation"); and *Hoskins v. Lawhead, et.al.*, 1:18 - CV- 07732 ("The Federal Litigation")(Collectively, "the Hoskins Dispute").

4.  Michael Blair Lawhead ("Blair") passed away on March 14, 2018.

5.  The people involved in this matter are, as follows: Donaldson V. Lawhead ("Donald") is the natural father to Michael Blair Lawhead; Tammara D. Lawhead is the natural mother to Michael Blair Lawhead. And, Tawnda J. Bickford and Brandon V. Lawhead ("Brandon") are the siblings of Blair Lawhead. (Collectively, "the Lawheads")

6.  Donaldson V. Lawhead and Brandon V. Lawhead are attorneys licensed to practice law in the State of Minnesota; and practice in a law firm, called Lawhead Law Offices.

7.  At all times in my representation of the Lawheads during the Hoskins dispute, neither Donaldson nor Brandon Lawhead purported to act as New York lawyers or represent themselves;

8.  It is my understanding from the Lawheads that within one hour of being advised of Blair's death, Brandon V. Lawhead, as an attorney for the Estate, initiated an attorney-client relationship with Joseph Martin Carasso, Esq. ("Carasso") to advise about New York Law and the Lawheads' rights and responsibilities as beneficiaries and siblings.

9.  It is also my understanding based on conversation with Brandon that Brandon had contacted Carasso from Minnesota within hours of learning of Blair's death because of Hoskins' known litigious and hostile nature. It is my understanding that Brandon advised Carasso:

    a.   that there was no Will;
    b.   that Blair had a great deal of valuable art and other property that was insured, but he was concerned about protecting the property;

c.   that Hoskins lived with Blair for over 7 years in Blair's apartment in a COOP at Chelsea Gardens in New York City;

d.   that Blair also had a house in Hudson, New York, and Hoskins had put his name on the electric bill and used the Hudson House address for his New York driver's license;

e.   that Blair had a significant amount of valuable art in the Hudson House;

f.   that Hoskins and Blair were not married, that they were estranged, and that Blair had a business space in Chelsea Gardens;

g.   that Blair's business dealt with a significant amount of cash and Blair stored a significant amount of that cash in a safe in the Chelsea Gardens apartment;

10.   Subsequently, on or about March 19, 2018, the Lawheads executed a written retainer agreement. It is my understanding that Tammara D. Lawhead and Donaldson V. Lawhead executed this retainer in Minnesota.

11.   It is my understanding that Carasso advised the Lawheads to change the locks on the Hudson Home before they were appointed administrators. This resulted in Hoskins claiming an unlawful ouster in the Federal Lawsuit. Given the dynamics of this matter, Carasso's advice was negligent under New York Law, and it caused damages to the Lawheads.

12.   It is my understanding that Carasso advised the Lawheads that they stood in the shoes of the decedent, Blair Lawhead, and they had an equal right to be in the apartment before the Lawheads were administrators. This culminated in Hoskins claiming a trespass in the Federal Lawsuit.

13.   It is my understanding from conversations with Brandon and Donald that Carasso advised the Lawheads that they could open up the safe, using a "safe cracker" in Blair's apartment, and that the Lawheads had the right to deposit the cash into a bank account, pay funeral expenses out of that cash, all prior to their being appointed as administrators. This culminated in Hoskins claiming conversion in the Federal Lawsuit. Given the dynamics of this matter, Carasso's advice was not accurate under New York Law.

14.   It is my understanding that Carasso advised the Lawheads that they could take his violin and bows to Minnesota for Blair's funeral prior to their being appointed administrators. This culminated in Hoskins claiming conversion in the Federal Lawsuit. Given the dynamics of this matter, Carasso's advice was not accurate under New York Law.

15.   Attached hereto and incorporated herein by reference as "Exhibit A" is a true and correct copy of correspondence sent by Thomas Hoskins' counsel, Peter Panero. In my opinion, this correspondence constituted a "claim" under the terms of the

Lawheads' malpractice policy. The Lawheads should have been advised to tender this claim to their malpractice insurer. That is, Carasso had a duty to advise the Lawheads to tender to their insurer for indemnification and defense.

16.     When I initially undertook representation of the Lawheads in the companion Federal Litigation, Hoskins v. Lawhead, 1:18 -cv-07732, I spoke with one of Hoskins' attorneys, Hayden Coleman. In this conversation, Coleman told me that he appreciated my professionalism, for the Lawheads' former attorney, Mr. Joseph Martin Carasso, hung up on Coleman as Coleman was attempting settlement negotiations with Carasso. From speaking to Hoskins' attorneys, no settlement offers by the Lawheads were conveyed by Carasso to Hoskins' attorneys. Carasso communicated no offers to enter into early mediation. I found this information alarming because when I commenced representation of the Lawheads, they told me that they had authorized Carasso to make an initial offer of $30,000 to Hoskins to settle the matter. The Lawheads also advised that they had told Carasso to offer that the parties to enter into early mediation. Carasso had a duty to convey the Lawheads' settlement offer, and the Lawheads' offer for early mediation. Like the many litigations, especially estate litigation, the nexus of this dispute was emotion. The failure to convey the Lawheads' settlement offers to Hoskins translated into more anger, which, in turn, culminated in more litigation, including the Lawheads' having to defend the Federal Litigation. The Lawheads incurred significant damages as a result of Carasso's failure to convey their settlement offers, including attorney fees and costs in defending the Federal Litigation and Surrogates Court Litigation.

17.     I have reviewed the Petitions drafted by Joseph Martin Carasso for Surrogates Court. On their face, the attorney work product surrounding the Petitions do not conform to the standards that Goldberg Segalla would deem acceptable. Specifically, they contain spelling errors, and Thomas Hoskins was misnamed by Carasso, and referenced as Hopkins. We never received the Lawheads' file from Attorney Carasso, though it was requested. Other than the petitions, themselves, Carasso's attorney work product provided no benefit to the Estate. Carasso's Petitions and novel attempts at discovery were fraught with controversy, as evidenced by the Notice of Motion and Motion, filed by Thomas Hoskins, on November 14, 2018, a copy of which is attached hereto and incorporated herein by reference.

18.     It is my understanding from conversations with Brandon and Donald that the Lawheads asked Carasso to give Hoskins "written notice" to vacate the Manhattan apartment because that is the procedure commonly used for landlord-tenant disputes in Minnesota. However, Carasso expressly advised the Lawheads that you don't give written notice in New York. Carasso's advice was incorrect, according to New York Law, and this failure to give notice resulted in significant delay and expense to the Estate, and the beneficiaries, Donaldson V. Lawhead and

Tammara D. Lawhead.

19.     In my opinion, the Lawheads were easy clients with which to work. They did not engage in hand-wringing and emotional outbursts; rather, they asked good questions about the law, and were eager to follow my advice at every stage of the litigation. Though they strongly disagreed with the allegations made by Hoskins, they were open-minded to the practical realities gained by resolution, they had realistic expectations, and they embraced creativity in getting this matter resolved.

20.     This concludes my affidavit.

Dated: February 12, 2020

_____

Adam S. Katz, Affiant

# EXHIBIT A

## A. KATZ AFFIRMATION

PETER PANARO
ATTORNEY AT LAW
4216 MERRICK ROAD
MASSAPEQUA, NY 11758
EMAIL: Llesqeapl.com

TELEPHONE: 516-541-4100                    TELECOPIER: 516-541-7558

April 5, 2018

VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL

Mr. Brandon Vaughn Lawhead
506 West Oakland Avenue
Austin, MN 55912

Mr. Brandon Vaughn Lawhead
2101 Ninth St. SW
Austin, MN 55912

Re: Matter of Thomas Hoskins v. Brandon Lawhead, et al.

Dear Mr. Lawhead:

PLEASE BE ADVISED that I have been retained by THOMAS HOSKINS ("my client" or "Tom") to represent his interest in several matters as against you, your sister, TAWANDA BICKFORD ("Tawanda"), your children, and others (collectively members of your family") involving serious misconduct, including but not limited to trespass, larceny, burglary, criminal mischief, harassment and conversion. As you know, my client and your brother, MICHAEL BLAIR LAWHEAD ("Blair"), were in a committed relationship for the seven years prior to his unfortunate death. During that time, Blair and Tom resided together as long-term partners in the cooperative apartment located at 255 West 23rd St., Apt 2 CE, NYC, NY, 10011 ("premises"). As such, my client is a lawful and legal tenant of the premises.

Specifically, my client informs me that his partner, Blair, suddenly and unexpectantly expired on March 14, 2018 after suffering a fatal heart attack. I am informed that within hours, you and/or several members of your family appeared at the premises from the State of Minnesota, without authority to do so, and without "Letters" from a court of competent jurisdiction, and engaged in misconduct wherein you and/or several members of your family removed cash, property, documents and possessions from the premises, much of which was the property of my client. I am informed that amongst one of those documents that you wrongfully removed from the premises included a Last Will and Testament that you were instructed to remove by your mother, via telephone conversation, which is corroborated by witnesses and audiotape.

1

I am also informed, by my client, that you are an attorney at law, and as such you knew, or should have known, that you could not remove property from the premises without Letters issued from a court of competent jurisdiction. Even if you take the untenable position that you did not remove a Last Will and Testament, my client's partner, under such a theory, died intestate, and you were required, as you are well aware, to have first obtained Letters of Administration, temporary or otherwise, from a court of competent jurisdiction before you could remove any property whatsoever.

My client informs me that prior to the police being summonsed, you and/or members of your family locked him out of his own apartment, and invited unknown people to the premises to aid with your illegal activity, all of which captured upon videotape. Further, after my client finally regained entry into his own apartment, he ordered the unknown party to leave the premises and she refused to do so, at your instruction.

My client further informs me that on Saturday morning, March 17, 2018, after awaking and noticing that you and/or members of your family rifled his personal papers and belongings, as if you had the right to do so, which of course, you did not, that he ordered you to leave his apartment forthwith, which you refused to do. Rather, you remained upon the premises, unlawfully and telephoned your sister, Tawanda, and she telephoned the police. The police arrived and ordered you and all members of your family to immediately leave. Notwithstanding the direction of the police, you and/or members of your family, including your sister, Tawanda and your children, continued to remain unlawfully upon the premises and continued to take pictures and videos, and engage in other unauthorized and unlawful activity.

Worse, notwithstanding being instructed by the police to vacate the premises, my client informs me that you and/or members of your family returned, uninvited, and unlawfully entered upon my client's premises and continued to remove possessions and property from the premises, much of which was the sole property of my client. My client called the police on this occasion, who, upon arrival, once again ordered you to vacate the premises.

Amongst the valuable items removed by you and/or members of your family from my client's premises, over the course of several days include, but are not limited to, multiple valuable violins, cash, papers, documents, keys to my client's partner's office, records, documents, a Last Will and Testament, and other possessions, much of which was the sole property of my client, without authority or Letters Testamentary or Letters of Administration from any court of competent jurisdiction. The removal of the property is clearly visible on videotape, which I have in my possession. The videotape also clearly shows that both you and Tawanda also brought multiple people to my client's apartment, without authorization, and without my client's knowledge, consent or permission, and further clearly shown on the videotape is your permitting, without any authority, Mr. CHARLES RICE, to enter my client's partner's business premises, without my client's knowledge and consent.

2

Moreover, my client has also discovered that during the time you were on the premises, his safe, located in the closet of his premises, was cut open and destroyed and all cash and documents from the safe were removed.

In addition to the above, I am informed that my client also enjoys a legal tenancy to the premises located at 312 Vernon St., Hudson, New York, and that you and/or members of your family, without Letters from any court of competent jurisdiction, defied explicit instructions by the Hudson County's Sheriff's office not to enter the premises and did, in fact, unlawfully enter the premises and engaged in illegal misconduct, including but not limited to removing property, changing the locks and the code on the alarm system.

I am further advised that you and/or members of your family have wrongfully removed the key to the commercial space on the first floor of the premises located at 255 West 23rd St., New York City, New York, where my client's partner conducted his business known as "Blair Hair".

DEMAND IS HEREBY MADE THAT YOU, AND MEMBERS OF YOUR FAMILY, IMMEDIATELY RETURN ANY AND ALL PROPERTY, POSSESSIONS, VIOLINS, FURNISHINGS, PAPERS, RECORDS DOCUMENTS, CASH, AND ANY OTHER PROPERTY FORTHWITH.

YOU AND MEMBERS OF YOUR FAMILY ARE HEREBY PLACED ON NOTICE THAT YOU ARE TO CEASE AND DESIST ANY FURTHER MISCONDUCT and you are not invited to the premises located at 255 West 23rd St., or 312 Vernon Street, Hudson, New York, for any reason at any time. My client is a lawful tenant of both of the said premises' and in the event you attempt entry, my client will call the authorities and ask that you or anyone else who enters without his EXPRESS WRITTEN PERMISSION, signed, and duly acknowledged in a form required to record a deed in the State of New York, be arrested forthwith.

I suggest you retain counsel and have him telephone my office within three days of receipt of this letter which is being sent by certified and regular mail. Failure to hear from your attorney will result in further legal action being taken immediately. Since you are the main target of this investigation, which may involve professional and ethical misconduct, as well as criminal misconduct and civil wrongs, I will not speak with you or have any communication with you whatsoever. I will speak only to a legal representative on your behalf.

Please be guided accordingly.

Very truly yours,

Peter Panaro

PP/ld
cc: Thomas Hoskins

3

# A. KATZ AFFIRMATION November 14, 2018 Panero Motion

File No. 2018-1121
SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of
BRANDON LAWHEAD, a co-Administrator of
the ESTATE OF MICHAEL BLAIR LAWHEAD,

                                                  Deceased,

For a Decree pursuant to SCPA Article 21 for possession
and use of 255 West 23rd Street, Apt. 2 CE, New York, NY,
an estate asset and other relief.

## NOTICE OF MOTION

**PETER PANARO**
Attorney for Respondent, THOMAS HOSKINS
4216 Merrick Road
Massapequa, New York 11758
516-541-4100
FAX 516-541-7559

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

Dated: Massapequa, New York
          November 14, 2018

          PETER PANARO

SURROGATE'S COURT: STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x

In the Matter of the Application of BRANDON
LAWHEAD, a co-Administrator of
the ESTATE OF MICHAEL BLAIR LAWHEAD
                                        Deceased,

For a decree pursuant to SCPA Article 21 for possession
and use of 255 West 23rd Street, Apt. 2CE, New York
NY, an estate asset and other relief.
----------------------------------------------------------------x

File # 2018-1121 **D**

**NOTICE OF MOTION**

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

**MOTION BY:**          RESPONDENT, THOMAS HOSKINS

**RETURN DATE:**        10:00 a.m., November 30, 2018, at Surrogate's Court,
                        County of New York, 31 Chambers Street, Room 507,
                        New York, New York, 10007, HON. RITA MELLA,
                        Surrogate, or as soon thereafter as counsel can be heard.

**SUPPORTING PAPERS:**  Affirmation of **PETER PANARO, ESQ.**, dated November
                        14, 2018, the Affidavit of **THOMAS HOSKINS**, sworn to
                        the 14th day of November, 2018 and all exhibits annexed
                        and all pleadings and proceedings had herein.

**RELIEF REQUESTED:**   1.   For an Order dismissing the Petition pursuant to
                             **CPLR §3211 (a) (7)** because the Petitioner did not
                             comply with Real Property Law Sec. 232-a in
                             serving a thirty day Notice to Terminate.

                        2.   For an Order dismissing the Petition because it is
                             jurisdictionally defective in that the Petitioner did
                             not serve Respondent with a Notice to Terminate
                             the premises as mandated by **Real Property Law
                             Sec. 232-a.**

                        3.   For an Order dismissing the Petition because it
                             fails to state a cause of action.

1

4.    For any other and other different relief as to this court may deem just and proper.

Dated:   Massapequa, New York
         November 14, 2018

PETER PANARO, ESQ.
Attorney for Respondent,
THOMAS HOSKINS
4216 Merrick Road
Massapequa, New York 11758
(516) 541-4100

TO:   **JOSEPH MARTIN CARASSO, ESQ.**
      Attorneys for Petitioner
      270 Madison Avenue, Suite 1500
      New York, New York 10016
      212-732-0500 (ph)
      718-504-3926 (fax)
      Email: jcarasso@prodigy.net

2

SURROGATE'S COURT; STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x
In the Matter of the Application of BRANDON
LAWHEAD, a co-Administrator of
the ESTATE OF MICHAEL BLAIR LAWHEAD

                                   Deceased,

For a decree pursuant to SCPA Article 21 for possession
and use of 255 West 23rd Street, Apt. 2CE, New York
NY, an estate asset and other relief.
----------------------------------------------------------------x

File # 2018-1121

AFFIDAVIT IN SUPPORT
CROSS MOTION & IN
OPPOSITION TO
PETITION

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

STATE OF NEW YORK   )
                   ) s.s.:
COUNTY OF NEW YORK)

THOMAS HOSKINS, being duly sworn, deposes and says:

    1.    I am the above named deponent and I am over the age of 21 years.

    2.    I make this Affidavit in support of my application to dismiss the Petitioner's petition for possession of the apartment located at 255 W. 23rd Street, Apt 2 CE, New York City, New York ("premises"), on the grounds that the Petitioner has failed to serve me with the mandated 30 day notice to terminate possession of the premises pursuant to law.

    3.    The premises in question were in the name of Michael Blair Lawhead, the deceased, ("Decedent").

    4.    The Deceased and I were partners in a long term, same-sex, romantic domestic relationship, residing together and sharing a home since 2011.

    5.    I have lived at the premises in question with the Decedent on a daily basis and continuously, from 2011 until his death on March 14, 2018, and thereafter, I have lived in the premises, alone, together with the two dogs we shared, until present. I still reside in the premises.

Therefore, notwithstanding there is no blood or legal relationship between us, the Decedent and I have always been family members residing together, and I have always been a lawful occupant and tenant of the premises.

6.      I was served with these papers seeking a warrant of eviction to oust me from the premises, notwithstanding that Petitioner **ADMITS** that I was "living with Decedent since 2010" (Pet. Aff., para. 4-5). While the Petitioner claims to be a "co-Administrator of the Estate of Michael Blair Lawhead (Pet. Aff., para. 1), and further alleges that "Donaldson V. Lawhead, Tammara D. Lawhead and myself were appointed on March 30, 2018", I have never seen a copy of the appointment letters that were issued in the instant Estate, notwithstanding I have repeatedly asked. Interestingly, conspicuously missing from his instant papers as an Exhibit are copies of any Letters evincing the appointment.

7.      In addition to being domestic partners who resided together in the premises since 2011, I have also shared equally in payment to the mortgage and maintenance charges, monthly, together with decedent, since 2011.

8.      Further, many of the possessions and artwork that are in the premises are my possessions and artwork, which were either purchased by myself, both Decedent and myself or gifted to me by Decedent and others.

9.      At issue in this case is the uncontroverted fact that I was never served with a Notice to Terminate the premises, and no such Notice was annexed to Petitioner's papers, which must result in a dismissal of this instant petition for a warrant of eviction and possession.

10.      Further at issue are the ownership rights to certain possessions located in the premises and elsewhere, some of which are listed in the instant Petition.

2

11.     The Petitioner, Brandon Lawhead, is an attorney at law, and upon information and belief, is licensed to practice law and in fact does practice law, in the state of Minnesota. Notwithstanding his ethical and professional duties, Brandon Lawhead, the Petitioner, and others, including some of the co-Administrators, together with Brandon Lawhead, and with each other, trespassed upon the premises, PRIOR TO ANY LETTERS, PRELIMINARY OR OTHERWISE, being issued, and removed valuable possessions, documentation and cash. I am in possession of videos evidencing same. There is presently pending a lawsuit in Federal District Court, Southern District of New York, seeking damages for the illegal conversion of possessions from the premises, trespass upon the premises, breach of fiduciary duty, etc., including a request for punitive damages. ("EXH A"). All of the Defendants have recently retained counsel after having defaulted in the federal lawsuit.

12.     This lawsuit was commenced subsequent to giving Petitioner due notice that demand was being made for the return of the converted items. ("EXH B").

13.     While the Petition alleges Decedent was the rightful owner of the possessions and other valuable tangibles valued at several millions of dollars, it is interesting to note that the Decedent's social security earnings showed that Decedent never reported more than $60,396 in any tax year, with most tax years Decedent declared less than $40,000. ("EXH C"). While this Social Security Statement is through the tax year 2004, my attorney is in the process of obtaining those from 2005 until the time of Decedent's death, which, upon information and belief, will be very similar.

14.     It will be the Petitioner's burden to demonstrate to this court's satisfaction, and eventually the Internal Revenue Service, just how the Decedent accumulated the premises which he purchased for approximately $500,000 in 2004, on such a meager income, as well as a house

3

located at 312 Union St., Hudson, in Hudson County, New York ("Hudson"), artwork, and possessions which, upon information and belief, were purchased for several million dollars.

15.    While not germane to the instant motion to dismiss the Petition, it will be alleged in this court and in Federal Court that not only did Petitioner and others trespass upon the premises, illegally, and illegally removed cash, possessions and documentations, much of which was mine, but that the Petitioner and others, locked me out of my occupancy to a house that Decedent owned in his name solely in Hudson County, but which I shared for more than seven years, with the deceitful use of a writing on the letterhead of Decedent's father's (Donaldson Lawhead, also a Minnesota lawyer) law firm's stationery, thereby effectively and constructively evicting me from my occupancy in the Hudson real property and locking me out from removing my lawful possessions, including my clothing!

16.    It is also alleged in the Federal lawsuit and will be alleged in this court that the Decedent and I had a safe on the premises which contained cash (mine and Decedent's) as well as Decedent's Last Will and Testament and the Petitioner admittedly cut the top off the safe, claiming he was looking for a Decedent's Will, but in fact, removed the Decedent's Will and all cash inside the safe, including cash that belonged to me. ("EXH A", para. 22).

17.    The Petitioner, through his attorney, Joseph Martin Carasso, Esq., thereafter attempted to subpoena me to require me to give testimony and deliver certain evidence and records to them by serving my doorman at the premises with a Subpoena Duces Tecum dated April 23, 2018. ("EXH D").

18.    My attorney informed Mr. Carasso that the subpoena did not comply with this court's rules for the issuance of subpoenas under SCPA 2103 and Mr. Carasso took no further action on the subpoena.

4

19.    I thereafter timely filed a claim against the estate for not less than One Million

($1,000,000.00) Dollars in order to compensate me for the above ("EXH E").

20.    Given the fact that I was not served with any Notice whatsoever, including but not

limited to a Notice to Terminate, a Notice to Quit, or any notice whatsoever, the Petitioner's

Petition for possession of the premises and for a warrant of eviction must be dismissed.

21.    No prior application for the relief requested herein has been heretofore made.

THOMAS HOSKINS

Sworn to before me this

1 4th day of NOVEMBER 2018.

Notary Public

PETER PANARO
Notary Public, State of New York
No. 4656132
Qualified in Nassau County
Commission Expires February 28, 20 22

5

SURROGATE'S COURT: STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

In the Matter of the Application of BRANDON
LAWHEAD, a co-Administrator of
the ESTATE OF MICHAEL BLAIR LAWHEAD

                                        Deceased,

For a decree pursuant to SCPA Article 21 for possession
and use of 255 West 23rd Street, Apt. 2CE, New York
NY, an estate asset and other relief.

-----------------------------------------------------------------x

File # 2018-1121

AFFIRMATION IN SUPPORT
CROSS MOTION & IN
OPPOSITION TO
PETITION

**TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:**

         PETER PANARO, an attorney duly licensed to practice law in the State of New York,

affirms the following to be true under the penalty of perjury:

         1.      I am an attorney at law, duly licensed to practice in the State of New York and in

Federal Courts for the Southern and Eastern Districts of New York, as well as the United States

Supreme Court.

         2.      I make this Affirmation in Support of my client, THOMAS HOSKINS'

("Respondent") application to dismiss the Petitioner's instant Petition for possession and a warrant

of eviction, and in opposition to the Petitioner's application.

         3.      The facts, upon information and belief, are as stated in my client's Affidavit.

         4.      The instant Petition seeks possession and a warrant of eviction in this court, of the

cooperative apartment located at 255 West 23rd St, Apt 2CE, New York City, New York, 10010,

("the premises"), wholly owned by the Decedent but occupied by the Respondent and Decedent,

who resided together for over seven years in a domestic partnership as same sex partners. As such,

upon the death of Decedent, the Respondent was the lawful occupant and tenant of the premises.

Since there was no lease, the Respondent is a month to month tenant.

1

5.     Real Property Law 232-a prescribes the notice to terminate monthly tenancy or tenancy from month to month in the City of New York.  It states:

> No monthly tenant, or tenant from month to month, shall hereafter be removed from any lands or buildings in the City of New York on the grounds of holding over his term  unless at least **thirty days before the expiration of the term** the landlord or his agent serve upon the tenant, in the same manner in which a notice of petition in summary proceedings is now allowed to be served by law, a notice in writing to the effect that the landlord elects to terminate the tenancy and that unless the tenant removes from such premises on the day on which his term expires the landlord will commence summary proceedings under the statute to remove such tenant therefrom. *(emphasis supplied).*

6.     The Petition must be dismissed because it is jurisdictionally and fatally defective in that there has been no prior Notice to Terminate Possession of the premises served upon Respondent.

5.     There must be strict compliance with the statutory requirements with a 30 day Notice to Terminate Possession.  *28 Mott St. V. Summit Import Corp.,* 64 Misc. 2d 860, 863. Where the notice is not given, the court has NO jurisdiction of a proceeding to recover possession. *Shelton Mgt., Corp. v. Rosenkrantz,* 184 Misc. 355; *see also, Riesenfield Inc. v. R-W Realty Co.,* 223 AppDiv. 140; 145 Beach Haven Apts. V. Volf, 97 Misc. 2d 824.  Courts have consistently ruled there must be strict compliance with this statutory requirement to give courts jurisdiction. *BMG Enterprises, Inc., v. Bagdon,* 17 Misc. 3d 795 (2007).

6.     Failure to comply with the thirty day notice provided for in RPL 232-a is jurisdictionally fatal.  *Stribula v. Wien,* 107 Misc. 2d 114 (App. Term., First Dept., 1980). Service of a valid predicate 30 day notice is a prerequisite to the commencement of an action for

2

possession and a warrant of eviction. *Chinatown Apts. V. Chu Cho Lam*, 51 N.Y. 2d 786 (Ct. of App., 1980); *Kaycee West 113th St. Corp. v. Diakoff*, 160 A. D. 573 (1st Dept., 1990).

7.     In fact, failure "to serve any notice on the respondent terminating his tenancy, the respondent is not a holdover tenant. As such, (the) court lacks jurisdiction to terminate the tenancy, despite the establishment by competent evidence that the respondent is an objectionable tenant warranting removal". *BMB Enterprixes, Inc. v. Bagdon, supra* at 797.

WHEREFORE, it is respectfully prayed that an order be issued dismissing the within action.

Dated: Massapequa, New York
       November 14, 2018

PETER PANARO, ESQ.
Attorney for THOMAS HOSKINS
4216 Merrick Road
Massapequa, NY 11758
516-541-4100

3

AO 440 (Rev. 06/12) Summons in a Civil Action.

# UNITED STATES DISTRICT COURT
## for the
### Southern District of New York ☐

| | |
|---|---|
| Thomas Lawrence Hoskins | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 1:18-cv-07732 |
| Tammara Lawhead, Donaldson Lawhead, Tawnda J. Bickford, Brandon V. Lawhead | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Brandon V. Lawhead
506 West Oakland Avenue
Austin, Minnesota 55912

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Peter Panaro
THE LAW OFFICE OF PETER PANARO
4216 Merrick Road
Massapequa, New York 11758

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ___9/5/2018___          /S/ P. NEPTUNE
*Signature of Clerk or Deputy Clerk*

*EXHIBIT A*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:18-cv-07732

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Thomas Lawrence Hoskins,

Plaintiff,

-against-

Tammara Lawhead, Donaldson Lawhead,
Tawnda J. Bickford, Brandon V. Lawhead,

Defendant.

Case No. _____

COMPLAINT

Jury Trial Requested

## INTRODUCTION

1.      This Complaint arises out of the sudden and premature death of Michael Blair Lawhead ("Blair"). On the morning of March 14, 2018, Blair suffered a massive heart attack. For the seven years that proceeded that fateful morning, Blair and Plaintiff Thomas Hoskins ("Plaintiff" or "Tom") were in a live-in committed, long-term romantic relationship. Despite Plaintiff's efforts to revive him by administrating CPR, Blair died.

2.      What followed was a highly organized conspiracy by and among the Defendants to convert as much cash, personal property, documents and possessions from the two properties that Tom and Blair shared and lived in for over seven years: an apartment in New York City and a house in Hudson, New York.

3.      As set forth more fully below, the Defendants employed multiple illegal, tortious, and unethical means to enter Plaintiff's apartment and wrongfully convert Plaintiff's personal property, including but not limited to: (i) multiple and knowing trespasses into the New York residence; (ii) breaking into a safe located in Plaintiff's apartment and removing all cash and documents, including what is believed to be Blair's Last Will and Testament; (iii) creating

fraudulent documents and presenting these to the Police Department in Hudson, New York to give the misimpression that they had a legal right to the Hudson house; and (iv) attempting to obtain illegal entrance to the New York residence by threatening and intimidating the building's management company and Plaintiff's agents. Plaintiff has demanded that Defendants return the property that they converted, but they have steadfastly refused.

4.      At all relevant times, Defendants have acted with intent, malice and depraved indifference to Plaintiff's extreme suffering in the wake of Blair's death. Indeed, they strategically utilized Plaintiff's grief and shock to help effect their misdeeds. This lawsuit seeks the return of Plaintiff's property and additional compensation as allowed by law, including compensatory and punitive damages.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over all Defendants under NY CPLR § 302 because all of the Defendants committed a tortious act within New York State and/or committed tortious acts without the state causing injury to persons or property within the State.

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York. Venue is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of property that is the subject of the action is situated in the Southern District of New York.

## PARTIES

### I.   PLAINTIFFS

8.     At all relevant times, Thomas Lawrence Hoskins resides in, and is the sole occupant of, the apartment in New York County known as 255 West 23rd Street, Apt. 2CE, New York, New York 10011 (the "apartment" or "New York residence"). Plaintiff also enjoys a lawful tenancy in a house in Columbia County, New York, known as 312 Union St., Hudson, New York, 12534 (the "Hudson house"). Plaintiff and Blair were in a committed relationship for the past seven years and, up until the time of his death, lived in both properties together as a couple.

### II.   DEFENDANTS

9.     At all relevant times, Brandon Vaughn Lawhead ("Brandon") is a citizen of the State of Minnesota. He is a lawyer licensed to practice law in the State of Minnesota who maintains an office at 506 West Oakland Avenue, Austin Minnesota, 55912. He is the brother of the decedent, Blair Lawhead.

10.    At all relevant times, Donaldson Lawhead ("Don") is a citizen of the State of Minnesota. He is a lawyer licensed to practice law in the State of Minnesota who maintains an office at 506 West Oakland Avenue, Austin Minnesota, 55912. He is the father of the decedent, Blair Lawhead.

11.    At all relevant times, Tammara Lawhead ("Tammy") is a citizen of the State of Minnesota. She is the mother of the decedent, Blair Lawhead.

12.    At all relevant times, Tawnda Jeanne Bickford ("Tawnda") is a citizen of the State of Minnesota. She is the sister of the decedent Blair Lawhead.

3

## FACTUAL ALLEGATIONS

13.     On the morning of March 14, 2018, Blair suffered a massive heart attack. Despite Plaintiff's efforts to revive him through CPR, Blair died.

14.     What followed was a highly organized conspiracy by the Defendants to defraud and deprive Plaintiff of his personal property and his lawful possession and tenancy in the New York residence and the Hudson house.

15.     Within hours of being told of Blair's death, Defendants, acting in concert and with intent, deployed Brandon and Tawnda to go to New York City with the express purpose of converting as much cash and personal property as possible without any legal authority to do so, and without "Letters" from a court of competent jurisdiction. The two appeared, uninvited, at the New York residence from the State of Minnesota, waiting in the lobby of the building until Plaintiff returned. They accosted Plaintiff in the lobby and demanded that they be allowed to stay in the apartment. Still in shock from Blair's death—which occurred only hours earlier—and having no reason to believe that Brandon (a lawyer) or Tawnda would behave unlawfully or unethically, Plaintiff allowed the Defendants into the apartment.

16.     It soon became apparent that this was not the case. Rather, Brandon and Tawnda—acting at the express direction of Tammy who was directing all of the activity by telephone—engaged in misconduct wherein Brandon, Tawnda, and several known and unknown persons removed cash, property, documents and possessions from the premises, much of which was the sole property of Plaintiff.

17.     Upon information and belief, Blair's Last Will and Testament was among the documents that Defendants wrongfully removed from the premises.

18.     On March 16, 2018, Defendants locked Plaintiff out of his own apartment and invited unknown people to the premises. After Plaintiff finally regained entry into his apartment,

4

he ordered an unknown woman who was let into the apartment by the Defendants to leave. At Defendants' instruction, she refused to do so.

19.     On the morning of March 17, 2018, Plaintiff discovered that Defendants had ransacked Plaintiff's closet and rifled through his personal papers and belongings, which Plaintiff specifically instructed Defendants not to do. Plaintiff also discovered that valuable property had been removed from the apartment in his absence, much of which was his sole property.

20.     At that point, Plaintiff unequivocally told Brandon to leave the apartment. Brandon refused and called Tawnda, who, in turn, called the police. The police arrived and confirmed that Brandon, Tawnda and others they had allowed to illegally enter the residence had no right to be in there and should leave immediately. Nevertheless, not only did Brandon stay in the apartment without permission, he had his teenage children come to the apartment, uninvited, to assist Defendants in in their intentional, unauthorized, unlawful, and unethical activities.

21.     On the evening of March 17, 2018, Plaintiff called the police to report that Brandon and his children refused to leave the apartment and had removed highly valuable property from the premises. The police arrived and again informed Brandon that he had no right to be in the apartment. When he refused to leave, they escorted him out.

22.     During the time that Defendants were in the apartment, Defendants admit that they cut open and destroyed a safe, which was located in a closet of the residence, and removed all cash and documents from the safe. Blair's Last Will and Testament is believed to have been in the safe.

23.     Among the other valuable items removed by Defendants and members of his family over the course of several days include, but are not limited to, multiple valuable violins,

cash, papers, documents, and other possessions, much of which was Plaintiff's sole property.
They also sole an expensive violin that was the sole property of a neighbor who had entrusted it
to Blair to get it repaired.  Defendants acted with intent and without any legal authority or Letters
Testamentary or Letters of Administration from any court of competent jurisdiction.

24.     The removal of the property is clearly visible on surveillance videotape, which
also shows that Brandon and Tawnda brought multiple people to the New York residence,
without authorization, and without Plaintiff's knowledge, consent or permission.

25.     In addition to the above, Plaintiff also enjoys a legal tenancy to the premises
located at 312 Union St., Hudson, New York.  Defendants, acting in concert and without Letters
from any court of competent jurisdiction, sought to have the Hudson County's Sheriff's office
change the locks and alarm code on the property with the specific purpose of denying Plaintiff
entry to his own residence and access to his own property.  The Hudson County Sheriff's office
told Defendants unequivocally that they had no right to enter the Hudson house.  Undeterred,
Defendants, upon information and belief, forged documents using the letterhead from Don
Lawhead's law practice and faxed it to a junior officer at the Hudson County Sheriff's office,
asserting that this document showed that Defendants had a right to gain entry into the Hudson
house.  Not knowing that the Lawhead letter was a forgery (and was, in any event, legally
insufficient to vest Defendants with any authority to enter the premises, let alone prevent
Plaintiff from doing so), the officer worked with Defendants to arrange for a locksmith to change
the locks and the alarm company to change the security code.  Plaintiff is now unable to enter the
premises or use any of his multiple possessions within the Hudson house.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Trespass (against all Defendants)

26.    Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

27.    Plaintiff is currently the sole lawful tenant of the New York residence.

28.    Defendants, acting with intent or recklessness, repeatedly refused to leave Plaintiff's New York residence, even after Plaintiff and the police told them that they had no legal right to be there.

29.    Defendants, acting with intent or recklessness, invited known and unknown persons into the apartment without permission, to assist Defendants in in their intentional, unauthorized, unlawful, and unethical activities.

30.    Defendants, acting with intent or recklessness, exceeded any authority that they were given to enter the property by engaging in illegal and unethical acts, including, but limited to: (1) locking Plaintiff out of his apartment; (2) causing unauthorized intrusions upon Plaintiff's property by multiple third parties; (3) admittedly breaking into a safe on the property and removing its contents; (4) ransacked Plaintiff's closet and rifled through his personal papers and belongings, which Plaintiff specifically instructed Defendants not to do; and (5) removing cash and person property from the apartment.

31.    Defendants also committed trespass through fraud and deceit to mislead agents of the Hudson County Police Department to change the locks and alarm code of the Hudson house, with the express purpose of denying Plaintiff access to his home to which he enjoys a legal tenancy.

32.     Defendants' conduct has caused Plaintiff to sustain substantial monetary and non-monetary damages greatly exceeding $75,000.00.

33.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages; and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest.  Punitive damages are also appropriate because Defendants acted with actual malice to harm Plaintiff and in wanton, willful or reckless disregard of Plaintiff's rights.

### SECOND CLAIM FOR RELIEF

### Trespass to Chattel/Conversion (against all Defendants)

34.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

35.     Plaintiff has a possessory right or interest in all of the property in the New York residence and the Hudson house.

36.     Defendants, individually and through their agents, have wrongfully and intentionally interfered with Plaintiff's possessory interest in the property in the New York residence by: (1) breaking into a safe on the property and removing its contents, including substantial amounts of cash and legal papers; and (2) removing property from the apartment, including multiple valuable violins, papers, documents, and other possessions, much of which was Plaintiff's sole property.

37.     Plaintiff has demanded the return of this property but Defendants have refused.

38.     Defendants, individually and through their agents, have wrongfully and intentionally interfered with Plaintiff's possessory interest in the property in the Hudson home by using trickery, fraud, and deceit to deny Plaintiff access to his property, including clothing, art work, papers, dishes, antiques and other valuables.

8

39.    Plaintiff has demanded that he be given access to this property but Defendants have refused.

40.    Defendants conduct has caused Plaintiff to sustain substantial monetary and non-monetary damages.

41.    Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest. Punitive damages are also appropriate because Defendants acted with actual malice to harm Plaintiff and in wanton, willful or reckless disregard of Plaintiff's rights.

### THIRD CLAIM FOR RELIEF

### Civil Conspiracy/Aiding and Abetting (against all Defendants)

42.    Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

43.    Defendants engaged in a civil conspiracy in their unlawful trespass and conversion of property. Defendants' conspiracy and acts in furtherance thereof are alleged in detail in this Complaint, including, without limitation, in Plaintiff's Count for trespass and conversion. Such allegations are specifically incorporated herein.

44.    Defendants acted with a common understanding and design to commit unlawful acts, as alleged herein, and acted purposely, without a reasonable or lawful excuse, which directly caused the injuries alleged herein.

45.    Defendants acted with malice, purposely, intentionally, unlawfully, and without a reasonable of lawful excuse.

46.     Defendants' conduct in furtherance of the conspiracy described herein was not mere parallel conduct because each Defendant acted in concert to and against the Plaintiff's interest.

47.     Defendants' conspiracy, and Defendants' intentional, reckless and negligent actions and omissions in furtherance thereof, caused the direct and foreseeable losses alleged herein.

48.     Defendants' misconduct does not concern a discrete event.  Rather, it involves an ongoing conspiracy to steal, deprive, convert, and defraud Plaintiff out of his rightful real and personal property interest.  Indeed, the conspiracy is still active and continues to deprive Plaintiff of his rightful real and personal property interest.

49.     Plaintiff seeks all legal and equitable relief as allowed by law, including inter alia injunctive relief, restitution, disgorgement of profits, compensatory and punitive damages, and all damages allowed by law to be paid by the Defendants, attorney fees and costs, and pre-and post-judgment interest.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment (against all Defendants)

50.     Plaintiff repeats, re-allege, and incorporate by reference each and every allegation set forth as if fully set forth herein.

51.     As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from their trespass into the apartment and conversion of cash, personal property, documents and possessions from the premises, much of which was Plaintiff's sole property.

52.     Defendants were aware of these obvious benefits, and their retention of the benefit is unjust.

53.     Defendants have unjustly retained benefits to the detriment of Plaintiff, and Defendants' retention of such benefits violates the fundamental principles of justice, equity, and good conscience.

54.     Plaintiff seeks an order compelling Defendants to disgorge all unjust enrichment to Plaintiff, and awarding such other, further, and different relief as this Honorable Court may deem just.

## PRAYER FOR RELIEF

55.     Plaintiff respectfully requests the following relief that this Court enter an order of judgment granting all relief requested in this complaint, and/or allowed at law or in equity, including:

a.      Immediate return of all money and property illegally taken from Plaintiff's premises;

b.      Actual damages;

c.      Punitive damages;

e.      Exemplary damages;

f.      Disgorgement of unjust enrichment

g.      Forfeiture, disgorgement, restitution and/or divestiture of proceeds and assets;

h.      Attorneys' fees;

i.      Costs and expenses of suit;

j.      Pre- and post-judgment interest; and

k.      Such other and further relief as this Court deems appropriate.

DATED:   New York, New York
         July 24, 2018

The Law Office of Peter Panero

By: _____

        Peter Panaro
        liesq@aol.com

4216 Merrick Road
Masspaequa, New York  11758

Attorneys for Thomas Hoskins

PETER PANARO
ATTORNEY AT LAW
4216 MERRICK ROAD
MASSAPEQUA, NY 11758
EMAIL: Llesq@aol.com

TELEPHONE: 516-541-4100

TELECOPIER: 516-541-7558

April 5, 2018

VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED
AND FIRST CLASS MAIL

Mr. Brandon Vaughn Lawhead
506 West Oakland Avenue
Austin, MN 55912

Mr. Brandon Vaughn Lawhead
2101 Ninth St. SW
Austin, MN 55912

Re:  Matter of Thomas Hoskins v. Brandon Lawhead, et al.

Dear Mr. Lawhead:

PLEASE BE ADVISED that I have been retained by THOMAS HOSKINS ("my client" or "Tom") to represent his interest in several matters as against you, your sister, TAWANDA BICKFORD ("Tawanda"), your children, and others (collectively members of your family") involving serious misconduct, including but not limited to trespass, larceny, burglary, criminal mischief, harassment and conversion.  As you know, my client and your brother, MICHAEL BLAIR LAWHEAD ("Blair"), were in a committed relationship for the seven years prior to his unfortunate death.  During that time, Blair and Tom resided together as long-term partners in the cooperative apartment located at 255 West 23rd St., Apt 2 CE, NYC, NY, 10011 ("premises").  As such, my client is a lawful and legal tenant of the premises.

Specifically, my client informs me that his partner, Blair, suddenly and unexpectantly expired on March 14, 2018 after suffering a fatal heart attack.  I am informed that within hours, you and/or several members of your family appeared at the premises from the State of Minnesota, without authority to do so, and without "Letters" from a court of competent jurisdiction, and engaged in misconduct wherein you and/or several members of your family removed cash, property, documents and possessions from the premises, much of which was the property of my client.  I am informed that amongst one of those documents that you wrongfully removed from the premises included a Last Will and Testament that you were instructed to remove by your mother, via telephone conversation, which is corroborated by witnesses and audiotape.

1

EXHIBIT B

I am also informed, by my client, that you are an attorney at law, and as such you knew, or should have known, that you could not remove property from the premises without Letters issued from a court of competent jurisdiction. Even if you take the untenable position that you did not remove a Last Will and Testament, my client's partner, under such a theory, died intestate, and you were required, as you are well aware, to have first obtained Letters of Administration, temporary or otherwise, from a court of competent jurisdiction before you could remove any property whatsoever.

My client informs me that prior to the police being summonsed, you and/or members of your family locked him out of his own apartment, and invited unknown people to the premises to aid with your illegal activity, all of which captured upon videotape. Further, after my client finally regained entry into his own apartment, he ordered the unknown party to leave the premises and she refused to do so, at your instruction.

My client further informs me that on Saturday morning, March 17, 2018, after awaking and noticing that you and/or members of your family rifled his personal papers and belongings, as if you had the right to do so, which of course, you did not, that he ordered you to leave his apartment forthwith, which you refused to do. Rather, you remained upon the premises, unlawfully and telephoned your sister, Tawanda, and she telephoned the police. The police arrived and ordered you and all members of your family to immediately leave. Notwithstanding the direction of the police, you and/or members of your family, including your sister, Tawanda and your children, continued to remain unlawfully upon the premises and continued to take pictures and videos, and engage in other unauthorized and unlawful activity.

Worse, notwithstanding being instructed by the police to vacate the premises, my client informs me that you and/or members of your family returned, uninvited, and unlawfully entered upon my client's premises and continued to remove possessions and property from the premises, much of which was the sole property of my client. My client called the police on this occasion, who, upon arrival, once again ordered you to vacate the premises.

Amongst the valuable items removed by you and/or members of your family from my client's premises, over the course of several days include, but are not limited to, multiple valuable violins, cash, papers, documents, keys to my client's partner's office, records, documents, a Last Will and Testament, and other possessions, much of which was the sole property of my client, without authority or Letters Testamentary or Letters of Administration from any court of competent jurisdiction. The removal of the property is clearly visible on videotape, which I have in my possession. The videotape also clearly shows that both you and Tawanda also brought multiple people to my client's apartment, without authorization, and without my client's knowledge, consent or permission, and further clearly shown on the videotape is your permitting, without any authority, Mr. CHARLES RICE, to enter my client's partner's business premises, without my client's knowledge and consent.

2

Moreover, my client has also discovered that during the time you were on the premises, his safe, located in the closet of his premises, was cut open and destroyed and all cash and documents from the safe were removed.

In addition to the above, I am informed that my client also enjoys a legal tenancy to the premises located at 312 Vernon St., Hudson, New York, and that you and/or members of your family, without Letters from any court of competent jurisdiction, defied explicit instructions by the Hudson County's Sheriff's office not to enter the premises and did, in fact, unlawfully enter the premises and engaged in illegal misconduct, including but not limited to removing property, changing the locks and the code on the alarm system.

I am further advised that you and/or members of your family have wrongfully removed the key to the commercial space on the first floor of the premises located at 255 West 23rd St., New York City, New York, where my client's partner conducted his business known as "Blair Hair".

**DEMAND IS HEREBY MADE THAT YOU, AND MEMBERS OF YOUR FAMILY, IMMEDIATELY RETURN ANY AND ALL PROPERTY, POSSESSIONS, VIOLINS, FURNISHINGS, PAPERS, RECORDS DOCUMENTS, CASH, AND ANY OTHER PROPERTY FORTHWITH.**

**YOU AND MEMBERS OF YOUR FAMILY ARE HEREBY PLACED ON NOTICE THAT YOU ARE TO CEASE AND DESIST ANY FURTHER MISCONDUCT** and you are not invited to the premises located at 255 West 23rd St., or 312 Vernon Street, Hudson, New York, for any reason at any time. My client is a lawful tenant of both of the said premises' and in the event you attempt entry, my client will call the authorities and ask that you or anyone else who enters without his **EXPRESS WRITTEN PERMISSION**, signed, and duly acknowledged in a form required to record a deed in the State of New York, be arrested forthwith.

I suggest you retain counsel and have him telephone my office within three days of receipt of this letter which is being sent by certified and regular mail. Failure to hear from your attorney will result in further legal action being taken immediately. Since you are the main target of this investigation, which may involve professional and ethical misconduct, as well as criminal misconduct and civil wrongs, I will not speak with you or have any communication with you whatsoever. I will speak only to a legal representative on your behalf.

Please be guided accordingly.

Very truly yours,

Peter Panaro

PP/ld
cc: Thomas Hoskins

3



SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
In re the Estate of

                                     File No: 2018-1121

     Michael Blair Lawhead
     aka Blair Lawhead                    *SUBPOENA*
     Michael B. Lawhead              *DUCES TECUM*
     M.B. Lawhead,

                         Deceased.
----------------------------------------------------------------------X

### THE PEOPLE OF THE STATE OF NEW YORK

TO:       Thomas Hopkins

Address:     255 West 23rd Street Apt. 2CE
             New York, NY 10011

     **THIS SUBPOENA REQUIRES YOUR PERSONAL APPEARANCE AT
THE TIME AND PLACE SPECIFIED. FAILURE TO APPEAR MAY SUBJECT
YOU TO FINE AND IMPRISONMENT FOR CONTEMPT OF COURT.**

     **WE COMMAND YOU** that all business and excuses being set aside, you and each
of you appear and attend, at the offices of the Law Offices of Joseph Martin Carasso, Esq.,
270 Madison Avenue, Suite 1500, New York, New York 10016, on the 22nd day of May,
2018, at 2:00 o'clock in the afternoon, and at any recessed or adjourned date, to give
testimony in the above-entitled action, and that you bring with you, and produce at the time
and place aforesaid copies of the following documents:

     1.     a) All records that pertain to any occupancy or ownership rights for the
premises listed below;
             b) All audio and video tapes of the Administrators and their agents;
             c) All audio and video tapes of the Deceased pertaining to a Last Will and
Testament, ownership or occupancy of the premises listed below, ownership of the furniture
and furnishings contained in the premises listed below;
             d) All records pertaining to the premises listed below and the furniture and
furnishings of said premises, including records pertaining to the date you moved into the
premises, a lease if any, an agreement between you and deceased of any kind, records
pertaining to the purchase of the premises or the furnishings, records pertaining to your
contribution to the purchase of the premises and the furnishings, mortgage statements and
records;

                                    1

*EXHIBIT D*

e) Records pertaining to your allegation that the Administrators took your property, including identification of the property and evidence of value of same;

f) All records pertaining to the Deceased, including tax records, business records, phone records, cable bills, repair bills, legal papers and other document and records, automobile records, insurance, credit card receipts;

g) All correspondence to Chelsea Owners Garden Corp and or Rudd Realty Management;

h) All copies of rent checks to the Deceased and or Chelsea Owners Garden Corp and or Rudd Realty Management or others pertaining to the premises listed below;

I) All records pertaining to the Deceased's health insurance and all medical records of the Deceased;

j) All records pertaining to any interest in an automobile and all records of storage charges, maintenance, upkeep, purchase of gas, purchase of the vehicle;

k) All agreement of any kind between you and the Deceased.;

l) All records of a safe deposit box of you or the Deceased;

| | |
|---|---|
| Deceased: | Michael Blair Lawhead aka Blair Lawhead aka Michael B. Lawhead aka M.B. Lawhead |
| Premises: | 255 West 23rd Street, Apt. 2 CE, New York, NY ("Apartment"), and 255 West 23rd Street, P1DE New York, NY ("Studio") 312 Vernon Street, Hudson, New York ("Hudson Property") |

**YOUR FAILURE TO COMPLY** with this *subpoena* may be punishable as a contempt of Court and shall make you liable to the person on whose behalf this *subpoena* was issued for a penalty not to exceed Fifty ($50.00) Dollars and all damages sustained by reason of your failure to comply with this *subpoena*.

WITNESS, the Honorable Rita Mella, Surrogate of the Surrogate's Court, New York County, 31 Chambers Street, New York, New York on the 23th day of April, 2018.

Yours, etc.

LAW OFFICES OF
JOSEPH MARTIN CARASSO, ESQ
Attorneys for Administrators
Don Lawhead, Tammara Lawhead and
Brandon Lawhead

By: Joseph Martin Carasso, Esq.

270 Madison Suite 1500
New York, New York 10016
(212) 732-0500

2

SURROGATE'S COURT
STATE OF NEW YORK, COUNTY OF NEW YORK          Index No.          Year

In re the

    Estate of Michael Blair Lawhead
          aka Blair Lawhead
          aka Michael B. Lawhead
          aka M B Lawhead

             Deceased.

SUBPOENA DUCES TECUM

JOSEPH MARTIN CARASSO, ESQ.
*Attorney(s) for*   Administrators Donald Lawhead,
           Tammara Lawhead and Brandon Lawhead
*Office and Post Office Address, Telephone*
270 Madison Avenue, Suite 1500
New York, New York  10016
212-732-0500

To                         Signature (Rule 130-1.1-a)

                        Print name beneath

                        Service of a copy of the within is hereby admitted.

Attorney(s) for              Dated:

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                    of which the within is a true copy
will be presented for settlement to the HON.            one of the judges of the
within named Court, at
on                 at          M.
Dated,

                      Yours, etc.

JOSEPH MARTIN GARASSO
ATTORNEY AT LAW

6693

April 23, 2018

Pay To The
Order Of    Thomas Hopkins                    $ 18⁰⁰/₁₀₀

Eighteen and °°/100                                    Dollars

Bank of America

For Leonard D Grebe          Joseph Martin Garasso



"EXHIBIT 2"

Surrogates Court:
State of New York: County of New York

In the Matter of the Estate of Michael                    **CLAIM AGAINST THE ESTATE**
Blair Lawhead,                                            File # 2018-1121
a/k/a Blair Lawhead
Michael B. Lawhead
M.B. Lawhead,

                                        Deceased
-------------------------------------------------------x

To JOSEPH MARTIN CARASSO, ESQ., attorney for the fiduciaries of the Estate of Michael
Blair Lawhead, and to Donaldson Lawhead, a/k/a Don Lawhead, Tammara Lawhead and Brandon
V. Lawhead, Administrators of the Estate of Michael Blair Lawhead, to whom letters were issued
for the above named estate:

Claimant's Name, address and phone number
Thomas Lawrence Hoskins
255 West 23rd St.
Apt 2CE
New York City, New York 10011
917-757-5266

The claimant listed above is the owner of valuable cash, personalty, papers, documents, records in
the amount of not less than **ONE MILLION ($1,000,000.00) DOLLARS**, with applicable
interest.

The facts upon which the claim is based is the joint earnings of Deceased and Claimant, the joint
accumulation of cash, joint purchase and possession of furnishings, musical instruments, personal
effects, papers, records, documents and other valuables by both the Deceased and Claimant during
their period of Domestic Partnership as well as the purchase and possession and accumulation of
Claimant's separate property, which was taken by the fiduciaries and Administrators of the Estate,
or some of them, including but not limited to Brandon Lawhead and Tammara Lawhead, from the
premises located at 255 West 23rd St., Apt 2CE, New York City, New York, 10011, as evidenced
by videotape showing the removal of property from the apartment building by said fiduciaries,
prior to obtaining letters of administration from a court of competent jurisdiction, while Thomas
Lawrence Hoskins, ("Thomas Hoskins"), Claimant, was and is still the lawful occupant of the
premises.

Further, this claim is based upon the facts that the joint accumulation of and joint purchase and
possession of furnishings, musical instruments, personal effects, papers, records, documents and
other valuables by both the Deceased and Claimant during their period of Domestic Partnership as
well as the purchase and possession and accumulation of Claimant's separate property at the
premises located at 312 Union Street, Hudson, New York is property that was taken or is being
unlawfully withheld by the said Administrators of the Estate, or some of them, including but not

*EXHIBIT E*

limited to Brandon V. Lawhead and Tammara Lawhead, with the help and aid of the fraudulent misrepresentation to the Hudson Police Department by one or all of the Administrators on the legal stationary from the law firm owned and operated by one of the said Administrators, Donaldson Lawhead, prior to obtaining letters of administration from a court of competent jurisdiction, while Thomas Hoskins, Claimant, was the lawful occupant of the premises.

Further claim is made as against the estate for the tortious wrongs committed against the Claimant, Thomas Hoskins, by the Administrators of the Estate of Deceased, including but not limited to illegally locking the Claimant out of his home located at 312 Union Street, Hudson, New York, where the Claimant maintains a lawful tenancy, with the fraudulent use of the legal stationary of the law firms owned and operated by one of the Administrators of the Estate of the Deceased.

Date of Claim will become due:     Now Due, except for any amounts that may be awarded in a Federal District Lawsuit pending in the Southern District of New York, entitled Thomas Lawrence Hoskins, Plaintiff v. Tammara Lawhead, Donaldson Lawhead, Tawanda J. Bickford, Brandon V. Lawhead, which will be due upon judgment.

The amount of the claim is justly due; all payments, if any, have be credited, the claimant knows of no offsets and no evidence of indebtedness and holds no security, unless specifically noted in the claim detail.

Nature of Claim:

Monies owed to Thomas Lawrence Hoskins individually by the Estate of Michael Blair Lawhead, and by Michael Blair Lawhead, individually, and by Brandon V. Lawhead, Tammara Lawhead, Donaldson Lawhead and Tawanda J. Bickford, individually.

THOMAS LAWRENCE HOSKINS

Sworn to me, this 8th day of October, 2018.

Notary Public

PETER PANARO
Notary Public, State of New York
No. 4655132
Qualified in Nassau County
Commission Expires February 28, 20 22

SURROGATE'S COURT: STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

In the Matter of the Application of BRANDON                    File # 2018-1121
LAWHEAD, a co-Administrator of
the ESTATE OF MICHAEL BLAIR LAWHEAD                            **AFFIDAVIT OF SERVICE**

                                    Deceased,

For a decree pursuant to SCPA Article 21 for possession
and use of 255 West 23rd Street, Apt. 2CE, New York
NY, an estate asset and other relief.
------------------------------------------------------------x

STATE OF NEW YORK)
                                    ) s.s.:
COUNTY OF NASSAU )

          I, LINDA DIBIASE, being duly sworn, depose and says:

          1.        That I am the above named deponent, am over the age of 18 years and reside at
Massapequa Park, New York.

          2.        That on the 14th day of November, 2018, I served the within NOTICE OF
MOTION by depositing a true copy thereof enclosed in a post-paid wrapper, in an official
depository under the exclusive care and custody of the U.S. Postal Service within New York
State, addressed to:

          JOSEPH MARTIN CARASSO, ESQ.
          Attorney for Petitioner
          270 Madison Avenue, Suite 1500
          New York, NY 10016


                                                            LINDA DIBIASE

Sworn to before me this
14th day of November 2018



Notary Public

PETER PANARO
Notary Public, State of New York
No. 4658132
Qualified in Nassau County
Commission Expires February 28, 20 22

# EXHIBIT 2

## RETAINER AGREEMENT

This Retainer is between is made between Joseph Martin
Carasso, Esq., and Don Lawhead, Tammara Lawhead and Brandon
Lawhead (hereinafter "Client").

1.   STATEMENT AND SUBJECT OF RETAINER.  Client hereby
retains and employs Joseph Martin Carasso Esq., to represent
client with respect the estate of the Blair Lawhead, including
commencing an action for Letters of Administration and related
matters.

Attorney may associate with other attorneys or other
professionals after client's consent.  Attorney has not been
retained for any other work or matter or for claims against other
persons.

2.   ATTORNEY'S FEES.  Client agrees to pay attorney 's fees
in accordance with the following Rate Schedule:
    a)             as a total fixed fee.
    b) $400.00    per hour for attorney
    c) $100.00    per hour for Law Clerk/Paralegals
The rates set forth in this Rate Schedule may be changed
after one year on thirty (30) days written notice by attorney to
client.  Please note that Attorney will charge client for all
time spent on clients case or matter, including telephone calls
and for travel.

3.   RETAINER FEE/DEPOSITS.  Client agrees to pay attorney an
initial deposit of $5,000 (for legal fees), plus the sum of
$1,250 for expenses, for a total of $6,250 with the return of a
signed copy of this agreement.  All unused funds will be returned
to the client at the end of the matter.  Client authorizes
attorney to use such deposits to pay the fees, costs, and other
expenses incurred in connection with the subject of this
agreement.

Attorney may at any time require additional deposits as
needed.  Client agrees to pay all deposits after the initial
deposit within fifteen (15) days of attorney's request.  Any
unused deposit at the conclusion of attorney's services will be
refunded. Attorney will send client periodic statements of fees,
costs, and expenses incurred.

4.   COSTS AND EXPENSES.
    a) In addition to the hourly fees set forth in
Paragraph 2 of this Agreement, client agrees to pay all costs and
expenses incurred in connection with clients's case including,
but not limited to, costs fixed by law or assessed by courts and
other agencies, court reporters' fees, messenger fees, delivery
fees, postage, parking, transportation, photocopying, FAX
transmission costs, and other similar items.  All costs and
expenses will be charged at Attorneys' cost.  When applicable,
photocopying and scanning will be charged at the rate of 25¢ per
copy.

5.   CLIENT'S RESPONSIBILITIES.  Client agrees to tell

attorney the truth, to cooperate, to advise attorney of relevant
developments, and to pay attorney's fees promptly after receipt
of invoice.

6.   ATTORNEY'S RESPONSIBILITIES/DISCLAIMER OF GUARANTEE.
Attorney shall exercise his independent professional judgment and
undivided attorney loyalty on behalf of client. Attorney shall
conduct himself ethically in accordance with the Code of
Professional Responsibility and shall preserve client's
confidences and secrets to the extent permitted by law.
Attorney will use attorney's best efforts in representing
client. However, attorney makes no promises or guarantees
regarding the outcome of client's case or matter. Attorney's
comments regarding the outcome of the case or the time frame
within which client's case will be resolved are mere expressions
of opinion and not guarantees.

7.   TERMINATION AND WITHDRAWAL.   Client may terminate this
agreement at any time. Attorney may withdraw from the case with
client's consent at any time. Attorney may withdraw from the
case without client's consent for good cause.
Upon the termination of attorney's services, whether or not
it is terminated by client or by attorney, all unpaid charges
shall immediately become due and payable to attorney. Attorney
will likewise deliver to client all records of the case and all
property of client in attorney's possession, except those subject
to any lien

8.   ATTORNEY'S LIEN.   Client grants attorney a lien on all
claims in which attorney represents client under this agreement.
The lien shall cover any sums due and owing to attorney at the
termination of attorney's services and will attach to any money
or property recovered by client. Attorney shall also have a lien
on client's records, money or property in attorney's possession
for any sums due and owing to attorney at the termination of
attorney's services.

9.   ARBITRATION.   In the event of a fee dispute between the
parties, the client agrees to arbitrate the fee dispute under
Part 137 of the Rules of the Chief Administrator and the laws of
the State of New York, and further agrees that the decision of
the arbitrators shall be final and binding.

DATED: March 19, 2018

JOSEPH MARTIN CARASSO

Client represents that client has carefully read, understood
and agrees to the above terms and conditions.

Don Lawhead

Donaldson V. Lawhead

Tammara Lawhead

Brandon Lawhead

Tammara Lawhead

Brandon Lawhead

3/19/18