UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DONALDSON V. LAWHEAD, TAMMARA D. LAWHEAD, and BRANDON V. LAWHEAD, | Civil No. 20-520 (JRT/DTS) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| THE LAW OFFICES OF JOSEPH MARTIN CARASSO and JOSEPH MARTIN CARASSO, | |
| Defendants. | |

---

Marshall H Tanick, **MEYER NJUS TANICK P.A.**, 330 Second Avenue South #350, Minneapolis, MN 55401; Brandon V. Lawhead, **LAWHEAD LAW OFFICE**, 506 West Oakland Avenue, Austin, MN 55912, for plaintiffs.

Mark A. Bloomquist and Travis Jorge Allen, **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendants.

Plaintiffs Donaldson V. Lawhead, Tammara D. Lawhead, and Brandon V. Lawhead (collectively, the "Lawheads") filed this legal malpractice and breach-of-contract action against their former attorney, Defendant Joseph Martin Carasso and his law office, for allegedly providing negligent legal advice regarding the administration of a family member's estate in New York. Carasso filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), arguing that the Court lacks personal jurisdiction over him. The Lawheads opposed the motion and, in the alternative, requested jurisdictional discovery. Because

neither Carasso nor his law firm have sufficient minimum contacts with Minnesota, the Court will grant Defendants' Motion to Dismiss. Further, because the Lawheads fail to dispute any facts central to the Court's reasoning, the Court will deny the Lawheads' request for jurisdictional discovery.

## BACKGROUND

### I.  THE PARTIES

The Lawheads are residents of Minnesota and were appointed Administrators to the Estate of Michael Blair Lawhead ("Blair Lawhead"), the late son of Donaldson and Tammara, and brother of Brandon. (Compl. at 1, ¶ 3, Feb. 14, 2020, Docket No. 1.) Donaldson and Brandon Lawhead attended William Mitchell College of Law in St. Paul, Minnesota, and run a father-son law practice, Lawhead Law Office, in Austin, MN.

Carasso is a resident of New York and his solo law practice—the Law Offices of Joseph Martin Carasso—has one office located in New York. (Compl. ¶ 4; Decl. of Joseph Martin Carasso ("1st Carasso Decl.") ¶ 2, Mar. 10, 2020, Docket No. 8.) Carasso also attended William Mitchell College of Law, but has never maintained an office or a license to practice law in Minnesota, nor has he ever advertised or solicited business in the state. (1st Carasso Decl. ¶¶ 2, 5–6.)

### II.  THE PARTIES' RELATIONSHIP

The parties' relationship began in 2003, after Blair Lawhead reached out to his father and brother seeking a referral to a New York lawyer for a friend's personal injury

case. After seeing that Carasso attended William Mitchell College of Law and was a practicing attorney in New York, Brandon Lawhead reached out to Carasso to see if he would take the case. (Aff. of Brandon V. Lawhead ("Lawhead Aff.") ¶ 3, May 4, 2020, Docket No. 22.) Over the course of their 15-year relationship, the Lawheads referred two cases to Carasso in New York, the last of which ended in 2010. (2nd Decl. of Joseph Martin Carasso ¶ 2, May 18, 2020, Docket No. 32.) Carasso also represented Blair Lawhead on four New York real estate matters, the last of which ended in 2009. (*Id.* ¶ 3.) Prior to 2018, Carasso states that he had not had any contact with the Lawheads since 2010. (*Id.* ¶ 2.)

On March 14, 2018, Blair Lawhead passed away intestate after suffering a heart attack while working at his salon located in a studio space in his Cooperative (Co-Op) apartment building in New York. (Compl. ¶ 5.) Within hours after learning of Blair's death, Brandon Lawhead contacted Carasso from Minnesota and, within a few days, formally retained Carasso to handle Blair's Estate. (*Id.* ¶¶ 8–9; Lawhead Aff. ¶ 9, Ex. 1 at 2–4, May 4, 2020, Docket No. 21-1.) The Lawheads were concerned about protecting the Estate from Blair's partner, Thomas Hoskins, with whom Blair lived but was estranged and attempting to evict.[1] (Lawhead Aff. ¶ 8(C).) The Estate primarily consisted of Blair's apartment at the Co-Op, his salon at the Co-Op, a home in Hudson, New York, and various

---

[1] The parties dispute whether the two were estranged, but this fact is irrelevant to these proceedings.

other valuables, including approximately $45,000 in cash, a violin, and art collection, all of which were located in New York. (Compl. ¶¶ 5–6, 8–9; Lawhead Aff. ¶ 6.)

On the March 14 phone call and in one meeting with Carasso in New York, Carasso allegedly advised Brandon Lawhead that, prior to being appointed Administrator, Brandon (1) had an equal right to be in Blair's New York Apartment; (2) could change the locks on Blair's home in Hudson, New York, to keep Hoskins out; (3) could deposit Blair's cash into a bank account and use it to pay funeral expenses; and (4) could take the violin to Minnesota for Blair's funeral. (Compl. ¶ 10.) Brandon relied on Carasso's advice and took actions consistent with it. (*Id.*) As a result, Hoskins brought claims for trespass, unlawful ouster, and conversion against the Lawheads in New York federal court. (*Id.*) The Lawheads allege that Carasso continued to perform negligently by failing to convey a settlement offer to Hoskins, falsely representing to the Lawheads that he was an expert in Estate Litigation and the Surrogates Court in New York, and engaging in unauthorized discovery against the Co-Op. (*Id.* ¶¶ 11–17.)

In October 2018, the Lawheads fired Carasso and refused to pay him his remaining fees and expenses. (1st Carasso Decl. ¶ 12.) Litigation surrounding that dispute is ongoing in New York Surrogates Court. (*Id.* ¶ 14.)

### III.   PROCEDURAL HISTORY

On February 14, 2020, the Lawheads filed this action alleging four Counts: (I) legal malpractice; (II) breach of fiduciary duty; (III) negligent/intentional representation; and (IV) breach-of-contract.  (Compl. ¶¶ 20–46.)

On March 10, 2020, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) arguing that the Court lacks personal jurisdiction over them.  (Mot. to Dismiss, Mar. 10, 2020, Docket No. 5.)  The Lawheads opposed the Motion and also requested jurisdictional discovery in the alternative.  (Mem. Opp. at 30–31, May 4, 2020, Docket No. 20.)

On July 7, 2020, the Lawheads filed a motion to amend their complaint pursuant to Fed. R. Civ. P. 15.  (Mot. to Am., July 7, 2020, Docket No. 35.)  Because the Lawheads were not entitled to amend as a matter of course, and because they failed to comply with several local rules, the Magistrate Judge denied the motion without prejudice.  (Order, July 8, 2020, Docket No. 39.)

## DISCUSSION

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction.  "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction."  *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003).  "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found

to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)).  The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction."  *Epps,* 327 F.3d at 647.  For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party.  *Westley v. Mann,* 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

**II.    PERSONAL JURISDICTION AND DUE PROCESS**

The Court may exercise personal jurisdiction over a defendant only if doing so (1) is consistent with the Minnesota's long-arm statute, Minn. Stat. § 543.19, and (2) comports with the Due Process Clause of the Fourteenth Amendment.  *Pope*, 588 F. Supp. 2d at 1014–15.  Because Minnesota's long-arm statue extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process."  *Id*. at 1015.  "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction; general and specific.  General jurisdiction is sometimes called "all-purpose" jurisdiction because when a court has general jurisdiction over a defendant it may hear any claim brought against them, "even if all the incidents underlying the claim occurred in a different State."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  General jurisdiction is only appropriate when the defendant is "at home" in the forum State.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  For an individual, this is typically the State of domicile.  *Id.*  For a corporation, the paradigm is the State of incorporation and principal place of business.  *Id.*

Specific personal jurisdiction is sometimes called "case-linked" jurisdiction because it is only proper when the plaintiff's cause of action "arise[s] out of or relate[s] to the defendant's contacts with the forum" State.  *Bristol-Meyers*, 137 S. Ct. at 1780 (alterations accepted) (quoting *Daimler*, 571 U.S. at 137)).  Put another way, for specific personal jurisdiction to be consistent with the Due Process Clause, there must be a nexus between the forum state itself, the defendant, and the cause of action.  *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).  The plaintiff may not be the only link between the Defendant and the forum state; the Defendant must have themselves purposefully directed activity at the forum state itself.  *Id.* at 285–86.

With these considerations in mind, the Eighth Circuit's personal jurisdiction analysis requires the Court to examine five-factors before deciding whether personal jurisdiction is consistent with the Due Process Clause:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted). "[T]he first two factors go primarily to whether minimum contacts exist," the third determines whether the action arises from the contacts, and the last two examine reasonableness and are secondary to the first three primary factors. *Yellow Brick Road, LLC, v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. 2014).

As the Court has stated previously,

> The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state.

*Ahlgren v. Muller*, 438 F. Supp. 3d 981, 987 (D. Minn. 2020) (citing 13 Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (4th ed.)).

### III. ANALYSIS

#### A. Personal Jurisdiction

Plaintiffs fail to allege any facts to show that Defendants are "at home" in Minnesota. It is undisputed that Carasso is domiciled in New York and is the sole proprietor of his law firm, which only has one office located in New York. Accordingly, the Court lacks general personal jurisdiction over the Defendants.

As for specific personal jurisdiction, while acknowledging that Carasso never physically entered Minnesota, the Lawheads argue the quality and quantity of Defendants' contacts with Minnesota create sufficient minimum contacts with the State. These contacts include (1) Carasso's alleged solicitation of business from the Lawheads in Minnesota for nearly 20 years by phone, mail, and email; (2) the Retainer Agreement and the attorney-client relationship created between the parties; (3) the 150 emails Carasso sent to the Lawheads in Minnesota related to Blair's Estate, (4) a check Carasso sent to a Minnesota funeral home to pay for Blair's funeral; (5) the initial phone call made by Brandon Lawhead in Minnesota to Carasso in New York (referred to by the Lawheads as the "Minnesota Meeting"); and (4) the Retainer Agreement/attorney-client relationship between Carasso and the Lawheads.[2] The Lawheads also rely on a number of non-

---

[2] The Lawheads also argue that jurisdiction is proper because Carasso reviewed a purchase agreement related to Blair's estate that contained a Minnesota choice of law provision and
*(footnote continued on next page)*

precedential cases they say are on point and offer persuasive support for the Court to exercise specific personal jurisdiction over Defendants. *See, e.g.*, *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229 (5th Cir. 1995).

The Court disagrees for several reasons. First, it appears that many of the purported contacts Carasso had with Minnesota were not contacts with the State at all. For example, the Lawheads argue they had a 20-year relationship with Carasso in which he solicited business from them. In reality, however, the Lawheads acknowledge that they reached out to and solicited Carasso's services and did so only because they needed a lawyer in New York, not Minnesota. Additionally, it is undisputed that prior to Blair's death in 2018, the Lawheads referred only two cases to Carasso—which pertained solely to New York matters—and had not contacted Carasso since 2010.[3] The so-called "Minnesota Meeting" regarding Blair's estate was in fact, a phone call initiated by Brandon Lawhead to Carasso while Brandon was in Minnesota and Carasso was in New

---

discussed whether the Lawheads should bring a defamation claim against Hoskins in Minnesota. But that purchase agreement was not drafted by Carasso, had already been executed when he reviewed it, and Carasso was in New York when he reviewed it. Moreover, Carasso never represented the Lawheads in any Minnesota defamation action. And even if these facts were untrue, none of the allegations in the Complaint appear to have anything to do with the purchase agreement or defamation, and thus, the cause of action does not arise out of the purported Minnesota contacts.

[3] The four prior New York real estate matters that Carasso represented Blair Lawhead in are irrelevant to the determination of personal jurisdiction because they are wholly unconnected to Minnesota.

York, and the only physical meeting that took place between the parties occurred in New York. None of these contacts can be said to be purposefully directed at Minnesota by Defendants. *See Walden*, 571 U.S. at 285–86.

Second, contracting with or developing an attorney-client relationship with a resident of the forum state does not, by itself, create personal jurisdiction over the out-of-state defendant. *See, e.g.*, *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir. 1987) ("While we do not dispute Austad's claim that an attorney-client relationship existed between Austad and Pennie & Edmonds, we do not believe that Pennie & Edmonds had sufficient contacts with South Dakota to confer personal jurisdiction.")

Third, although the Lawheads rely primarily on non-precedential cases for support, the Court need not look beyond the Eighth Circuit's decision in *Austad* to decide this case. *Austad* affirmed the district court's dismissal for lack of personal jurisdiction under a similar set of facts, even though the law firm in *Austad* sent two attorneys into the forum state for three days to review documents for the plaintiff-client. *Id.* at 225–26. The panel noted that personal jurisdiction was lacking despite this because the law firm (1) did not maintain an office in the forum state or a license to practice law there; (2) never advertised nor solicited business in the forum state; (3) did not actively seek out the plaintiff as a client; and (4) the law firm represented them on matters outside the forum state. *Id.* at 226–27 (noting that "[b]ased on these facts, we do not believe a showing has

been made that [the defendant law firm] purposefully availed itself of the benefits and protections of the laws of [the forum state].")

Similar facts exist here. Carasso has never maintained an office in Minnesota or a license to practice law here. He has never advertised or solicited business here. And, much like the defendants in *Austad*, he did not actively seek out the Lawheads as a client—instead, it was the Lawheads that actively sought to retain Carasso. While it is true that Carasso purposefully sent telephone calls, emails, mail, and a check into Minnesota, these contacts are normal incidents of representation and do not confer jurisdiction. *See, e.g., id.*; *Viasystems, Inc.*, 646 F.3d at 594. And unlike the defendants in *Austad*, Carasso never physically entered the state for any reason related to the underlying cause of action.

Put simply, Carasso's only connection to Minnesota is the fortuitous fact that the Lawheads live here and that they attended the same law school as Carasso. When the only contacts a defendant has with the forum state are based on the plaintiffs' affiliations with the state, the contacts are too attenuated to satisfy Due Process.[4] *See, e.g.*, *Walden*, 571 U.S. at 285 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

---

[4] Because the Court finds that Carasso's conduct does not tie him to Minnesota in a meaningful way, Plaintiff's reliance on the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1983) is likewise unavailing. *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) (discussing the limitations of *Calder*).

attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King Corp. v. Rudzewicz*, 472 U.S. 462, 475 (1985))).

Accordingly, the Court finds that the quality and quantity of Carasso's contacts with Minnesota are insufficient to create minimum contacts and will grant Carasso's Motion to Dismiss pursuant to Rule 12(b)(2) without considering the remaining factors.

### B. Jurisdictional Discovery

In the alternative, the Lawheads seek jurisdictional discovery. Jurisdictional discovery is warranted when facts that could give rise to jurisdiction are in dispute. *Viasystems*, 646 F.3d at 598.  The Lawheads do not dispute any facts central to the Court's reasoning, nor do they provide any reason at all to justify their request for jurisdictional discovery.  Instead, the Lawheads urge the Court to permit jurisdictional discovery because there has been none.  This is an inadequate reason to grant jurisdictional discovery.  *Id.*  Accordingly, the Court will deny the Lawheads request for jurisdictional discovery.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 5.] is **GRANTED without prejudice**;

2. Plaintiffs' request for Jurisdictional discovery contained in their responsive briefing [Docket No. 20] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 31, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court